IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL GRAYSON,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>MIDLAND GROUP & ASSOCIATES, LLC,<br><br>　　　　　Defendant. | CV 24–133–M–DWM<br><br>ORDER and<br>DEFAULT JUDGMENT |

　　　　At some point prior to 2023, Plaintiff Daniel Grayson obtained a credit card from Capital One and became delinquent on his debt. (Doc. 1 at ¶ 6.) According to Grayson, that debt was based on a credit card his ex-wife obtained in his name and without his knowledge approximately twenty years ago. The debt was ultimately assigned for collection to Defendant Midland Group & Associates, LLC. (*Id.*) While the total debt was over $10,000 with penalties and fees, Midland agreed to settle the debt for the original amount of $1,440 if Grayson made monthly payments of $120. Beginning on May 8, 2023, Grayson made direct payments to Midland from his checking account in the amount of $120.17 per

1

month. (*Id.* ¶ 7; Doc. 14 at ¶ 3.) Those payments continued through the remainder of 2023. (Doc. 1 at ¶ 8.) On January 8 and February 6, 2024, Midland withdrew two more payments of $120.17 each. (*Id.* ¶ 9.) Then, on February 12, 2024, Midland sent Grayson a letter stating, "As of February 12, 2024, Midland Group & Associates, LLC, has released you from all claims and liabilities pertaining to" the Capital One account. (*Id.* ¶ 10.) That letter further advised that Midland would report the Capital One debt as "PAID IN FULL" to each of the three major credit reporting bureaus. (*Id.* ¶ 11; Doc. 14 at ¶ 2; Doc. 14-1.) Nevertheless, Midland continued debiting Grayson's account for $120.17 on March 6, 2024, and April 8, 2024. (Doc. 1 at ¶ 13; Doc. 14 at ¶ 5; *see* Doc. 14-2.) These payments have not been refunded. (Doc. 1 at ¶ 13; Doc. 14 at ¶ 6.)

On September 25, 2024, Grayson filed the present action, suing Midland under the Fair Debt Collection Practice Act and the Montana Consumer Protection Act. (*See generally* Doc. 1.) Despite being served, (*see* Docs. 4–8), Midland did not answer or otherwise appear. The Clerk entered default on January 22, 2025. (Doc. 10.) Grayson now requests default judgment be entered against Midland in the amount of $15,135.02. (*See* Doc. 13.) A hearing on damages was held on March 25, 2025, at which Grayson testified. Based on the documentary evidence submitted by Grayson and the testimony presented at the hearing, default judgment is entered in his favor in the amount of $15,135.02.

## ANALYSIS

The Federal Rules of Civil Procedure allow for entry of default or default judgment when a party against whom affirmative relief is sought fails to plead or otherwise defend against the claim. Fed. R. Civ. P. 55. However, a defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Rather, the district court has discretion to determine whether default judgment is appropriate, *id.*, based on its consideration of the following factors (the "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff if relief is denied;
> (2) the substantive merits of the plaintiff's claims;
> (3) the sufficiency of the claims raised in the complaint;
> (4) the sum of money at stake in relationship to the defendant's behavior;
> (5) the possibility of a dispute concerning material facts;
> (6) whether default was due to excusable neglect; and
> (7) the strong public policy favoring decisions on the merits.

See *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (noting that "the general rule [is] that default judgments are ordinarily disfavored" and cases should be decided on the merits whenever possible). At this stage of the proceedings, well-pleaded factual allegations, except those related to damages, are deemed admitted and are sufficient to establish the unresponsive defendant's liability. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). As it relates to damages, the amount claimed must be reasonable and substantiated by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b); *Cement & Concrete Workers Dist.*

3

*Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 234 (2d Cir. 2012).

I. *Eitel* **Factors**

Because a majority of the *Eitel* factors favor default judgment against Midland, Grayson's request for entry of default judgment is granted.

A. **Possibility of Prejudice to Plaintiff**

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment were not entered. *Eitel*, 782 F.2d at 1471. Here, Grayson "will be left with no other avenue for recovery" in the absence of a default judgment. *Meta Platforms, Inc. v. Arowokoko*, 2023 WL 3035454, at *5 (N.D. Cal. Feb. 24, 2023). This factor therefore weighs in favor of default judgment.

B. **Merits and Sufficiency of Plaintiffs' Claim**

The second and third *Eitel* factors require consideration of the merits of the plaintiff's substantive claims and the sufficiency of the operative complaint. *Eitel*, 782 F.2d at 1471–72. "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover." *Viet. Reform Party v. Viet Tan-Viet. Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks and alteration omitted). "Of all the Eitel factors, courts often consider the second and third factors to be the most important." *Id.* (internal quotation marks omitted). Here, Grayson has brought

4

claims under the Fair Debt Collection Practice Act and the Montana Consumer Protection Act. Because Grayson could recover on both claims, these factors favor the entry of default judgment.

### 1. Fair Debt Collection Practice Act

To establish a claim under the Fair Debt Collection Practice Act, "a plaintiff must establish that (1) the plaintiff is a consumer, (2) who was the object of a collection activity arising from a debt, (3) the defendant is a debt collector, and (4) the defendant violated a provision of the [Act]." *Rose v. Bank of Am., N.A.*, 2017 WL 1197822, at *5 (E.D. Wash. Mar. 30, 2017). The term "consumer" "means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). "Debt" "means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money . . . [is] primarily for personal, family, or household purposes." *Id.* § 1692a(5). Here, Grayson is a natural person that used his Capital One credit for personal, family, or household purposes. (*See* Doc. 1 at ¶ 18.) Midland is also a "debt collector" because it is an entity that "uses an instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, direct or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

5

According to Grayson, Midland violated the Fair Debt Collection Practice Act by collecting a debt, i.e. the additional $240.34, not authorized by any agreement in violation of 15 U.S.C. § 1692f(1) and taking a non-judicial action to effect disposition of $240.34 in violation of 15 U.S.C. § 1692f(6)(A). Alternatively, if the debt was not fully satisfied, Midland violated the Act by falsely representing the status of the debt in violation of 15 U.S.C. § 1692e. Additionally, Grayson indicates that he was "regularly told by Midland representatives that they would throw [him] in jail, that they would seize his bank account, and garnish [his] social security benefits." (Doc. 14 at ¶ 8.) This establishes an independent violation of the Act. *See* 15 U.S.C. § 1692e(4).

Accordingly, Grayson states a viable Fair Debt Collection Practice Act claim against Midland.

2.  **Montana Consumer Protection Act**

Because Grayson's Fair Debt Collection Practice Act and Montana Consumer Protection Act claims rely on the same grounds and his federal claims are valid as discussed above, his Montana Consumer Protection Act claims succeed on the same basis. *See Jacobson v. Bayview Loan Servicing, LLC*, 371 P.3d 397, 410 (Mont. 2016) ("[I]t is well established that a violation of federal consumer law pursuant to the FDCPA can also constitute grounds for violation of

6

Montana law pursuant the MCPA."). Accordingly, Grayson has established a viable Montana Consumer Protection Act claim against Midland.

### C. Sum of Money

Under the fourth *Eitel* factor, courts must consider the amount of money at stake in relation to the seriousness of the defendant's behavior. *Eitel*, 782 F.2d at 1472. "A large sum of money at stake would disfavor default judgment." *Durland v. Straub*, 2022 WL 2704169, at *6 (D. Or. July 12, 2022) (internal quotation marks omitted). Here, the sum of money is relatively minor, even considering Grayson's request for attorney fees and treble damages. Accordingly, this factor favors default judgment.

### D. Possible Factual Disputes

The fifth *Eitel* factor considers the possibility of material factual disputes. *Eitel*, 782 F.2d at 1472. "Because upon entry of default, all well-pleaded facts in the complaint are taken as true, the fifth factor weighs in favor of default judgment when the claims in the complaint are well-pleaded." *Durland*, 2022 WL 2704169, at *7 (internal quotation marks and alteration omitted). As discussed above, Grayson's claims are sufficiently pled and are consistent with the exhibits filed in support of his request for default judgment. (*See* Docs. 14, 14-1, 14-2.) This factor therefore weighs in favor of default judgment.

### E. Excusable Neglect

7

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. Here, Grayson served Midland via its registered agent in both California and Delaware. (*See* Doc. 9 at 2.) Midland failed to plead or otherwise defend. This factor therefore weighs in favor of default judgment.

### F.   Public Policy in Favor of Merits-Based Decisions

Finally, *Eitel* counsels that cases "should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. "However, this preference, standing alone, is not dispositive, and does not preclude a court from granting default judgment." *Farmer v. Thar Process, Inc.*, 2023 WL 8448498, at *7 (D. Or. Dec. 6, 2023) (internal quotation marks omitted). Thus, even though this factor weighs against default judgment, it does not preclude the entry of default judgment if the other factors so support it. *Id.*

## II.   Damages

Because the *Eitel* factors weigh in favor of the entry of default judgment, Grayson is entitled to damages. As mentioned above, however, Grayson cannot simply rest on his pleadings as it relates to damages, *see Geddes*, 559 F.2d at 560, but rather he must provide supporting evidence, *see Cement & Concrete Workers*, 699 F.3d at 234. Here, Grayson has submitted a personal declaration, (Doc. 14); Midland's February 2024 letter, (Doc. 14-1); Grayson's bank statements, (Doc. 14-

8

2); his attorney's declaration, (Doc. 15); a prior fee award decision, (Doc. 15-1); and his attorney's time sheet, (Doc. 15-2). Grayson also testified at the March 25 evidentiary hearing. Grayson seeks $15,135.02 in damages, calculated as follows:

| | |
|---|---|
| **Trebled Actual Damages** | **$10,030.02** |
| Emotional Distress | $3,000.00 |
| Economic | $240.34 |
| Lost Time | $103.00 |
| **Statutory** | **$1,000.00** |
| **Attorney Fees** | **$3,480.00** |
| **Costs** | **$625.00** |

This calculation is supported by the record.

### A. Actual Damages: $10,030.02

#### 1. Emotional Distress: $3,000.00

According to his testimony, Grayson is on Social Security disability and has been diagnosed with depression, bipolar disorder, ADHD, and borderline personality disorder. Grayson states that he was regularly threatened by Midland officials that they would throw him in jail, seize his bank account, or garnish his social security benefits. (Doc. 14 at ¶ 8.) He was also consistently "given [] the run around" when he attempted to address the discrepancies identified above. (*Id.* ¶ 9.) As a result of Midland's conduct, Grayson "had significant trouble sleeping"

9

and he "began taking heartburn and blood pressure medication because of the fear that the threats caused." (*Id.* at ¶ 10.) Grayson testified that as a result of the heartburn medication he was also forced to begin taking anti-nausea medications. According to Grayson, his interactions with Midland specifically and negatively affected his ability to sleep. Grayson also testified that this experience exacerbated his existing anxiety.

### 2.     Economic: $240.34

Grayson's economic damages are easily calculated as they are the two, $120.17 automatic withdrawals Midland took after his debt was paid in full. (*See* Doc. 14-2.)

### 3.     Lost Time: $103.00

Grayson requests $103.00 for the time he spent attempting to resolve this issue with Midland. This calculation is based on 10 hours he committed to the endeavor, at a rate of $10.30 per hour, the 2024 minimum wage in Montana. (*See* Doc. 14 at ¶ 12.) Grayson testified that the total of 10 hours includes 2 to 3 hours of actually speaking to someone at Midland. Such damages are recoverable. *See Morrow v. Bank of Am., N.A.*, 324 P.3d 1167, 1181 (Mont. 2014).

### 4.     Treble Damages

Grayson requests that the amount of actual damages be trebled under the Montana Consumer Protection Act, which provides that after a finding of liability

under the Act, the "court may, in its discretion, award up to three times the actual damages sustained." Mont. Code Ann. § 30–14–133(1). Such an award does not require a plaintiff to prove malice, oppression, or fraud. *See Plath v. Schonrock*, 64 P.3d 984, 988–89 (Mont. 2003). Treble damages are therefore "intended to be compensatory and remedial rather than punitive." *Id.* at 990. "A district court decision whether or not to award treble damage under the Act should be guided by the overall purpose of the Act itself, which is to protect the public from unfair or deceptive practices engaged in by trade or commerce. The specific purpose of the treble damage provision is to encourage consumers to bring these civil actions by making it more economically feasible." *Id.* Here, given the limited amount of actual damages and Midland's alleged misconduct, treble damages are warranted as such an award would further the purpose of the Act.

### B. Statutory Damages: $1,000

The Federal Debt Collection Practice Act provides for the recovery of statutory damages in the amount of no more than $1,000. 15 U.S.C. § 1692k(a)(2)(A). In assessing whether such damages should be awarded, courts must evaluate the frequency and consistency of the debt collector's noncompliance, the nature of the noncompliance, and whether the noncompliance was intentional. *Id.* § 1692k(b). Here, because Midland has engaged in more than

11

one violation of the Act as discussed above, a maximum statutory damages award is justified.

### C. Attorney Fees: $3,480.00

The Fair Debt Collection Practice Act authorizes attorney fees in a successful consumer suit. 15 U.S.C. § 1692k(a)(3). After establishing that a plaintiff is entitled to attorney fees, a court must calculate a reasonable fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). To determine a reasonable amount, courts generally calculate a "lodestar" by multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. Here, counsel spent 11.6 hours on the case—including 4 hours for the evidentiary hearing—and billed at a rate of $300.00 per hour. (*See* Doc. 15.) Counsel's experience and the limited number of attorneys that pursue consumer protection actions such as this supports his requested hourly rate. The time spent on the case is also fully documented. (*See* Doc. 15-2.) Thus, the request for $3,480.00 in attorney fees is granted.

### D. Costs: $625.00

Grayson requests $220.00 for service of process fees and $405.00 for court filings fees. These fees are recoverable under 28 U.S.C. § 1920.

12

## CONCLUSION

Based on the foregoing, IT IS ORDERED that default judgment is entered in favor of Grayson and against Midland in the amount of $15,135.02. The Clerk is directed to close the case file.

DATED this 25th day of March, 2025.

_____
Donald W. Molloy, District Judge
United States District Court